ELIJAH THOMAS, Plaintiff-Appellant, v. JOSEPH ZAMBERLETTI *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0272

Opinion filed July 11, 1985.

388

Robert G. Kirchner, of Greaves, Lerner & Kirchner, of Champaign, for appellant.

Craig J. Causeman, of Thomas, Mamer & Haughey, of Champaign, for appellee Plastipak Packaging, Inc.

JUSTICE TRAPP delivered the opinion of the court:

Plaintiff filed a complaint against the defendants, his former office manager and employer, alleging "wrongful discharge" and breach of contract. Defendants subsequently moved to dismiss the complaint, and the circuit court granted the motion. On appeal, plaintiff contends that the complaint did state a cause of action for wrongful (or retaliatory) discharge and that the circuit court erred by dismissing it.

Plaintiff filed his six-count complaint on February 10, 1984. Counts I, II, III, and IV alleged that plaintiff had been wrongfully discharged. Plastipak Packaging, Inc. (Plastipak), was named as defendant in counts III and IV, while Joseph Zamberletti, Plastipak's office manager, was named as defendant in counts I and II. Counts I and III requested compensatory damages and counts II and IV requested punitive damages. Counts V and VI alleged breach of an oral employment

contract.

The complaint alleged that plaintiff had been hired by Plastipak on August 9, 1983. On October 14, 1983, at approximately 1 p.m. plaintiff was injured in an automobile accident when the car in which he was a passenger was struck by another vehicle. Plaintiff was taken by ambulance to a Champaign hospital. He was treated there and subsequently released at approximately 5 p.m. on the same day. Plaintiff had been scheduled to work at 3 p.m. that day, and when he failed to report to work, his employment was terminated as of that date. The complaint further alleged that "it is the public policy of the State of Illinois for injured persons to receive medical attention, particularly in an emergency situation." Plaintiff then alleged that the termination of his employment "for said reason, violates the public policy of the State of Illinois."

Following a hearing, the circuit court granted defendants' motion to dismiss counts I through V of the complaint on March 22, 1984, and granted the motion to dismiss count VI on March 29, 1984. In its order of March 22, 1984, the circuit court found that "seeking or obtaining medical attention or care, even in an emergency, is not a matter of public policy."

The circuit court granted plaintiff leave to plead counts V and VI over; however, plaintiff, himself, moved to dismiss these counts on April 11, 1984. On the same date, the circuit court dismissed counts V and VI and found no just reason to delay appeal. Plaintiff then filed timely notice of appeal.

Plaintiff appeals only from the dismissal of counts I through IV of his complaint for failure to state a cause of action. Specifically, he argues that he properly stated a cause of action for retaliatory discharge. Defendants respond, and the circuit court found, that plaintiff failed to properly allege that his employment termination contravened any clear public policy of the State of Illinois.

■ To withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. (*Jones v. Eagle II* (1981), 99 Ill. App. 3d 64, 424 N.E.2d 1253.) Unless it clearly appears that no set of facts could be established which would entitle plaintiff to relief, a dismissal with prejudice should not be made. (*Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 361 N.E.2d 575.) Pleadings are to be liberally construed in favor of the plaintiff, and if the facts alleged demonstrate any possibility of recovery, the order of dismissal will be reversed. *Conyers v. Molloy* (1977), 50 Ill. App. 3d 17, 364 N.E.2d 986.

■ With the decision of *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d

172, 384 N.E.2d 353, Illinois joined the growing number of States recognizing the tort of retaliatory discharge. This tort is an exception to the general rule that an "at-will" employee can be discharged at any time for any cause. To state a cause of action for retaliatory discharge "[a]ll that is required is that the employer discharge the employee in retaliation for the employee's activities, and that the discharge be in contravention of a clearly mandated public policy." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876, 881.) On appeal, plaintiff concedes that he was an "at-will" employee.

In count I of his complaint, entitled "Wrongful Discharge," the plaintiff states that he was discharged "for failing to show up for work on October 14, 1983, at 3:00 p.m." The complaint also states that he was in a hospital at that time, receiving treatment for injuries he had suffered. The plaintiff then alleges that his discharge was in contravention of the public policy of Illinois that a person should receive medical attention, particularly in an emergency situation.

■ Initially, we believe that plaintiff has failed to properly state a cause of action for retaliatory discharge. Nowhere in the record does the plaintiff allege that he was discharged in retaliation for receiving medical treatment. Indeed, there is no indication that his employer knew of the reason for his failure to report to work. Plaintiff alleged only that he was discharged for failing to report to work. Such a reason for discharge violates no public policy of the State of Illinois, and plaintiff does not allege so. While plaintiff does allege that there is a public policy in favor of medical treatment for injuries, he has failed to allege that he was fired in retaliation for receiving medical treatment. Plaintiff's failure to ascribe a retaliatory motive to his employer in this regard results in a failure to state a cause of action for retaliatory discharge. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.

■ In any event, we also believe that an employee's discharge for seeking and receiving medical treatment violates no clear public policy of this State.

No Illinois court has been faced with a similar public policy contention. In *Kelsay*, the supreme court held that discharging an employee for filing a workers' compensation claim violated the clear public policy enunciated in the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*). In *Palmateer*, the supreme court held that discharging an employee for assisting the police in the investigation and prosecution of suspected crimes violated the clear public policy in favor of the enforcement of the criminal code of Illinois. (See also *Petrik v.*

*Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588.) Recently the supreme court held that an employer's discharge of an employee upon discovering that the employee had filed a workers' compensation claim against another employer was violative of the same clear public policy that was found in *Kelsay*. (*Darnell v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 473 N.E.2d 935.) Additionally, this court has recently held that an employee's discharge for refusing to work with possibly dangerous equipment did not contravene any clear public policy. (*Wheeler v. Caterpillar Tractor Co.* (1984), 123 Ill. App. 3d 539, 462 N.E.2d 1262.) This court also held that no clearly mandated public policy was contravened when an employee was discharged for filing a group health insurance claim. *Price v. Carmack Datsun, Inc.* (1984), 124 Ill. App. 3d 979, 464 N.E.2d 1245.

In *Palmateer*, the court discussed the definition of public policy, stating:

> "In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. (*Smith v. Board of Education* (1950), 405 Ill. 143, 147.) Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878-79.)

The court went on to list a number of decisions from other jurisdictions allowing the tort of retaliatory discharge where an employee was fired for refusing to violate a statute; refusing to evade jury duty; engaging in statutorily protected union activities; and for filing a workers' compensation claim. On the other hand, the action had not been allowed where an employee was fired for disputing a company's internal management system; taking too much sick leave; trying to examine company records; impugning the company's integrity; refusing to be examined by a psychological-stress evaluator; and for misusing an employer's Christmas fund.

In summary, the supreme court noted that the action had been allowed where the public policy was clear. However, the action was not allowed where it was clear that only private interests were at stake.

In the present case plaintiff alleges that he was fired for failing to report to work and that he failed to report because he was receiving

medical treatment at the time. Among the above examples that were listed in *Palmateer*, the one most closely related to the present factual situation would appear to be that where the employee was discharged for taking too much sick leave. The *Palmateer* court included this example in a group that involved only private interests. Likewise, the circuit court here stated that medical care for injury "is a duty or right arising from particular relationships," and as such is not a matter of public policy.

Plaintiff cites section 11—403 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—403), and section 1 of "An Act requiring hospitals to render hospital emergency service ***" (Ill. Rev. Stat. 1983, ch. 111½, par. 86), and urges that each announces a general public policy of providing and requiring medical care for injuries to persons. The first named statute simply provides that the driver of a motor vehicle "involved in a motor vehicle accident resulting in injury to or death of any person" shall supply his name, address, and exhibit an operator's license, and "shall render to any person injured in such accident reasonable assistance." By its terms, the obligation is imposed solely by reason of the operation of a motor vehicle on the highways of the State and any obligation imposed is not a general public obligation or policy.

The latter statute required that every hospital licensed by the State to provide general medical and surgical hospital services, shall provide hospital emergency services in accordance with the rules and regulations adopted by the Department of Public Health. Again, the statutory obligation is directed solely to persons or organizations exercising a licensed privilege and is not generally applicable to the public.

In *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, the supreme court expressly rejected a plaintiff's argument that the opinions in *Kelsay* and *Palmateer* "strongly supported" the expansion of the tort of retaliatory discharge. Rather, the court stated, "The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy." We can find no significant nexus between the statutes cited and the public policy argued by plaintiff and we find no "clearly mandated public policy" with any relevance to the relationship in an employment-at-will.

The judgment of the trial court is affirmed.

Affirmed.

MILLS and McCULLOUGH, JJ., concur.