Clarence JACKSON, Plaintiff–
Appellee/Cross–Appellant,

v.

BUNGE CORPORATION, Defendant–
Appellant/Cross–Appellee.

Nos. 93–2022, 93–2068 and 94–1144.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1994.

Decided Nov. 18, 1994.

John P. Womick, Mark A. Atkins, Womick & Associates, Gene Turk, Carbondale, IL (argued), for Clarence B. Jackson, in No. 93–2022.

Randall J. Rodewald, Mark A. Atkins, Womick & Associates, Gene Turk, Carbondale, IL (argued), for Clarence B. Jackson, in No. 93–2068.

John P. Womick, Womick & Associates, Gene A. Turk, Jr. (argued), Carbondale, IL, for Clarence B. Jackson in No. 94–1144.

Allan Goodloe, Jr. (argued), William A. Schmitt, Karen A. Carr, Thompson & Mitchell, Belleville, IL, for Bunge Corp.

Before CUMMINGS, ESCHBACH, and MANION, Circuit Judges.

ESCHBACH, Circuit Judge.

Defendant Bunge Corporation ("Bunge") appeals from final judgment entered after a jury verdict awarded $75,000 in compensatory damages to the plaintiff, Clarence Jackson. Bunge claims that the district court erred in denying its motions for judgment as a matter of law and its alternative motion for a new trial because Jackson failed to establish a *prima facie* case of retaliatory discharge for filing a workers' compensation claim under Illinois law. Bunge also argues that the district court erred in the following: admitting evidence of Bunge's net worth; excluding evidence of the arbitrator's decision; and refusing to grant Bunge's motion for summary judgment based on the arbitrator's decision. In addition, Jackson cross-appeals from the district court's decision to grant Bunge's motion for judgment as a matter of law on the issue of punitive damages. For the reasons stated below, we will affirm the district court on all grounds.

I.

Clarence Jackson had been employed as a boiler operator at Bunge's soybean processing plant since September, 1977. Both parties agree that the job of a boiler operator is a strenuous one that requires significant lifting, shoveling, bending and twisting. In slightly over ten years as a boiler operator with Bunge, Jackson suffered an on-the-job back injury on at least six separate occasions. His last injury, which is the injury in question, occurred on May 25, 1988. Jackson filed a workers' compensation claim on July 26, 1988. Prior to this last injury, Jackson had never filed a workers' compensation claim while employed at Bunge.

On May 25, 1988, Jackson was shoveling coal in the ordinary course of his job duties

when he experienced lower back pain. He went to a local doctor, Dr. Gordon Eller, for treatment. Dr. Eller treated him and released him with a restriction to light duty during the summer of 1988. Bunge agreed to find light duty work for Jackson and first assigned him to mowing duty, riding on a tractor. This work actually aggravated Jackson's low back problem, so Bunge assigned him more passive light duty activities such as dusting machines and cleaning windows. Jackson continued such restricted light duty for almost eight months. On January 24, 1989, Jackson's supervisors determined that there was no productive work for him to do, and they sent him home without pay. Bunge had not fired Jackson at this point; but instead, the company had asked him to stay home until he recovered from his injury.

On June 1, 1989, Jackson presented Bunge with a note from Dr. Eller clearing Jackson to return to work without restrictions. In response to this return-to-work slip, Bunge's plant manager, Claude Rose, sent a letter to Dr. Eller outlining Jackson's normal job functions and asking whether Dr. Eller would still recommend an unrestricted release. Dr. Eller responded by letter on June 13, 1989 and reconfirmed Jackson's full medical clearance, even though he acknowledged the possibility that Jackson might have a recurrence of back pain. Bunge refused to allow Jackson to return to work.

On February 7, 1990, Dr. Eller issued another return-to-work slip on Jackson's behalf. Still, Bunge did not allow Jackson to return to work. On February 28, 1990, Jackson filed a grievance pursuant to his union's collective bargaining agreement. Jackson alleged that he was being prevented from working in violation of union rules. An arbitration hearing was held, and on April 14, 1991, an arbitrator ruled against Jackson. On April 24, 1991, Bunge officially fired Jackson.

On February 10, 1992, Jackson filed suit against Bunge Corporation in Illinois state court alleging that Bunge had terminated his employment in retaliation for the exercising of his rights under the Illinois Workers' Compensation Act. Ill.Rev.Stat. ch. 48, paras. 138.1–138.30 (1989). Jackson's complaint sought both compensatory and punitive damages. Bunge was able to remove the action to the United States District Court for the Southern District of Illinois because there was diversity jurisdiction under 28 U.S.C. § 1332.[1] A jury trial commenced on March 8, 1993.

At the close of plaintiff's evidence, Bunge filed two separate motions for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. First, Bunge argued that Jackson had failed to establish a *prima facie* case of retaliatory discharge because he presented no evidence of Bunge's improper motive in terminating his employment. The district court denied this motion. Second, Bunge moved for a judgment as a matter of law on the issue of punitive damages. The district court granted this motion, and thus the jury was only allowed to award compensatory damages. At the close of all evidence, Bunge renewed its first motion for judgment as a matter of law. The court again denied the motion, and the case went to the jury.

The jury returned a verdict in favor of the plaintiff, awarding Jackson the stipulated compensatory damage amount of $75,000. Bunge filed a post-trial motion for judgment as a matter of law or, in the alternative, a new trial. The district court denied this motion in its entirety, and Bunge filed a timely notice of appeal. Jackson also filed a timely cross-appeal on the issue of punitive damages. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A.

Bunge contends that it should have been granted judgment as a matter of law because the plaintiff failed to establish a *prima facie* case of retaliatory discharge. Thus, Bunge appeals the district court's denial of its mo-

1. Jackson is an Illinois citizen, and Bunge is a New York corporation with its principal place of business in Missouri.

tions for directed verdict at the close of the plaintiff's evidence and at the close of all the evidence, as well as the denial of its post-trial motion for judgment notwithstanding the verdict ("JNOV"). Bunge also appeals the district court's denial of its alternative motion for a new trial.

In diversity cases, state law supplies the standard to be applied to motions for directed verdict and JNOV. *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 297 (7th Cir.1990); *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1355 (7th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986). According to Illinois law, which is the state law governing this case, a motion for directed verdict or JNOV should be granted only if "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R.*, 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967). We review the district court's decision *de novo* and apply for ourselves the *Pedrick* standard to the evidence in the record. *Trzcinski v. American Casualty Co.*, 953 F.2d 307, 313 (7th Cir. 1992) (citing *Eastman v. Chicago, Cent. & Pac. R.R.*, 930 F.2d 1173, 1176 (7th Cir. 1991)).

It is well settled that Illinois law recognizes the tort of retaliatory discharge in cases in which an employee is terminated for filing a workers' compensation claim. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 564, 384 N.E.2d 353, 358 (1978). Although the discharged employee in *Kelsay* was an "at-will" employee, Illinois case law has extended the scope of this tort action to apply to union workers as well. *See Midgett v. Sackett–Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 479, 473 N.E.2d 1280, 1284 (1984), *cert. denied*, 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985). In order to establish a claim of retaliatory discharge under Illinois law, Jackson must prove the following three elements: (1) he was an employee of Bunge prior to the injury; (2) he exercised a right granted by the Workers' Compensation Act; and (3) his discharge was causally related to the filing of a claim under

the Act. *Gonzalez v. Prestress Engineering Corp.*, 194 Ill.App.3d 819, 141 Ill.Dec. 606, 609, 551 N.E.2d 793, 796, *appeal denied*, 132 Ill.2d 544, 144 Ill.Dec. 257, 555 N.E.2d 376 (1990); *Slover v. Brown*, 140 Ill.App.3d 618, 94 Ill.Dec. 856, 858, 488 N.E.2d 1103, 1105 (1986). Moreover, under Illinois law, the element of causality is not satisfied if the employer has a valid basis for discharge which is not merely a pretext. *Hartlein v. Illinois Power Co.*, 151 Ill.2d 142, 176 Ill.Dec. 22, 30, 601 N.E.2d 720, 728 (1992) (citations omitted).

Bunge's contention focuses solely on the third element, the element of "causality" or "improper motive." Specifically, Bunge argues that Jackson failed to show that Bunge's motive for discharging him was to retaliate against his filing of a workers' compensation claim. Bunge claims that its reason for discharging Jackson was because of medical concerns regarding his low back problem, and it relies on the decisions of *Horton*, 776 F.2d at 1359; *Slover*, 94 Ill.Dec. at 858, 488 N.E.2d at 1105; and *La Porte v. Jostens, Inc.*, 213 Ill.App.3d 1089, 157 Ill.Dec. 745, 748, 572 N.E.2d 1209, 1212, *appeal denied*, 141 Ill.2d 543, 162 Ill.Dec. 491, 580 N.E.2d 117 (1991) for the proposition that termination of employment based on a plaintiff's physical condition is a valid basis for discharge and does not constitute retaliatory discharge under Illinois law.

Jackson concedes that he is unable to present any direct, "smoking gun" evidence to prove Bunge's retaliatory motive, and he suggests that this is because employers have become more sophisticated and more aware of potential liability based on a retaliatory discharge action. Thus, Jackson must rely on indirect, circumstantial evidence to show that Bunge fired him as a result of his filing a workers' compensation claim. This Court has recognized the need to use circumstantial evidence in such cases to prove a defendant's improper motive. *See Horton*, 776 F.2d at 1355 ("The non-movant 'has the right to prove ... [his case] by circumstantial evidence, which consists of proof of facts and circumstances from which the jury may infer other connected facts, reasonably following from the proven facts and circumstances.'")

(quoting *Sandburg–Schiller v. Rosello*, 119 Ill.App.3d 318, 74 Ill.Dec. 690, 702, 456 N.E.2d 192, 204 (1983)). Jackson's primary argument that he made a *prima facie* showing of causality is straightforward: Bunge promised Jackson that he would be allowed to return to work when he produced a doctor's slip that said he could return to work without restrictions; Jackson produced an unrestricted return-to-work slip signed by Dr. Eller; and Bunge nonetheless refused to allow Jackson to return to work. We find that the plaintiff presented sufficient evidence from which a jury could have drawn a reasonable inference of causality.

When Jackson first suffered his May, 1988 back injury, Bunge assigned him to light duty work. The record reflects that approximately eight months later, on January 24, 1989, Bunge took Jackson off light duty and asked him to go home until he made a full recovery. Dr. Eller had been treating Jackson for his injury,[2] and on June 1, 1989, Dr. Eller issued an unrestricted return-to-work slip on Jackson's behalf. Dr. Eller testified that this return-to-work slip imposed no limitations of a physical nature upon the plaintiff. Bunge, however, did not allow Jackson to return to work. Instead, Bunge sent a letter to Dr. Eller to further verify the extent of Jackson's medical release.

At trial, plaintiff called Bunge's plant manager, Claude Rose, as a witness. Rose admitted that Jackson had clearly presented Bunge with a return-to-work slip which, under normal circumstances, would have been understood as a full release to return to work without restrictions. However, Rose said that in situations in which the employee has been off work for a substantial period of time, he feels it is necessary to follow up and confirm that the treating physician is aware of the employee's job functions before allowing the employee to return to work. Thus, Rose sent a letter to Dr. Eller outlining Jackson's job functions and asking Dr. Eller

whether any of the listed activities could aggravate plaintiff's physical condition.

Dr. Eller responded to Rose's letter by sending a return letter dated June 13, 1989. Jackson presented this letter into evidence in which Dr. Eller wrote that he did understand the nature of Jackson's work and with this in mind he would still recommend that Jackson try returning to work. Dr. Eller noted in his letter that there was a chance that Jackson's back pain might recur in the future, but it is clear from the record that Dr. Eller had determined that Jackson was physically able to return to work. Again, Rose admitted on the witness stand that Dr. Eller's letter of June 13, 1989 indicated that Jackson had been given a doctor's clearance to return to work without restrictions. Although Illinois law does not obligate an employer to follow a doctor's advice, *see, e.g., Horton,* 776 F.2d at 1359, Rose testified that he had regularly relied upon doctors in the past in determining the physical limitations of injured employees. Moreover, Bunge provided no evidence that it had ever previously refused to abide by a doctor's clearance for an employee to return to work. Thus, the plaintiff was able to present circumstantial evidence from which the jury could reasonably infer the necessary causal relationship.

Bunge argues that it is entitled to a judgment as a matter of law because the plaintiff's discharge was based on his physical condition, which is a valid basis for discharge under Illinois law. *Horton,* 776 F.2d at 1359. In support of its decision to terminate Jackson based on his physical condition, Bunge refers to several telephone conversations which Rose allegedly had with Dr. Eller concerning Jackson's ability to return to work. Rose testified that Dr. Eller had told him over the phone that there was a very good likelihood that Jackson would reinjure himself if he were to resume his normal work activities. Thus, Bunge claims that it had a valid basis for discharging Jackson.[3]

---

**2.** The record indicates that Jackson had initially seen Dr. Geno Wong for this injury, but Bunge management subsequently referred Jackson to Dr. Eller for treatment.

**3.** While neither party addressed this Court's recent decision in *Hiatt v. Rockwell International*

*Corp.,* 26 F.3d 761 (7th Cir.1994), which the defendant arguably could have cited as supporting its argument in part, we note that after carefully examining the significant factual distinctions between *Hiatt* and the case at bar we find that a different holding is warranted in the instant case.

Jackson rebuts Bunge's stated reason as a pretext. *See McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 59–60 (7th Cir.1990) (holding that the plaintiff in a retaliatory discharge case had to show that defendant's valid reason for discharge was pretextual). First, Dr. Eller's deposition testimony fails to corroborate Rose's version of the telephone conversations conducted between Rose and Dr. Eller. Moreover, Dr. Eller testified that he would not have recommended Jackson's return to work if he felt that plaintiff was destined to have recurring back injuries at work. Dr. Eller also testified that on November 29, 1989, he suggested that Bunge could request a functional capacity evaluation to be performed on Jackson in order to determine more completely Jackson's ability to return to work; Bunge declined to have such an evaluation performed. Lastly, Jackson presented evidence that he had injured himself several times while working at Bunge, and he never once filed a workers' compensation claim prior to his May, 1988 injury. On many of these prior occasions he had suffered a low back injury, and Bunge had also put him on light duty before, but Bunge always allowed him to return to work upon recovery. However, after his injury on May 25, 1988, Jackson filed a workers' compensation claim for the first time. After a long recovery, Jackson was given full clearance to return to work—but this time, Bunge refused to allow Jackson to return to work. We cannot say that all of the evidence, when viewed in a light most favorable to Jackson, so overwhelmingly favors Bunge that no contrary verdict based on this evidence could ever stand. Therefore, we find that Bunge's claim that it is entitled to a judgment as a matter of law must fail.

Bunge also argues that the district court erred in denying its alternative motion for a new trial. Even in diversity cases, federal law governs our review of a district court's denial of a motion for a new trial. *Trzcinski*, 953 F.2d at 315. A district court may only grant a new trial if the jury's verdict is against the clear weight of the evidence, and we will only reverse the district court's deci-

sion if there is a clear abuse of discretion. *Id.; Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1182 (7th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993). This Court will not set aside a jury verdict as long as a reasonable basis exists in the record to support the verdict. *Trzcinski*, 953 F.2d at 315.

Under this deferential standard of review, we conclude that the district court did not abuse its discretion in denying Bunge's motion for a new trial. Our discussion of the evidence presented indicates that there is a reasonable basis in the record to support the verdict. Jackson set forth several lines of circumstantial evidence to show that he had been discharged in retaliation for his filing of a workers' compensation claim. Although the plaintiff's evidence may arguably have been thin, the district court's determination that the jury's verdict was not against the clear weight of the evidence was not an abuse of discretion.

### B.

■ Bunge also contends that the district court committed reversible error by admitting evidence of the defendant's financial condition. At trial, plaintiff's first witness was Claude Rose, Bunge's plant manager. Plaintiff questioned Rose about Bunge's assets,[4] and Bunge objected that plaintiff had not yet established a *prima facie* case for punitive damages. The district court allowed the questioning, presumably expecting that Jackson would later present evidence supporting his claim for punitive damages. As it turned out, Jackson never presented any such evidence and the district court granted Bunge's motion for judgment as a matter of law on the issue of punitive damages.

We first note that not all errors warrant reversal, *Cook v. Navistar Int'l Transp. Corp.*, 940 F.2d 207, 212 (7th Cir.1991), and more specifically, "[h]armless error with respect to the admission or exclusion of evidence is not cause for reversal." *Id.* (quoting *Oriental Health Spa v. City of Fort Wayne*,

---

4. Rose testified that the gross revenue of Bunge's Cairo, Illinois facility was in excess of $30 million, its net revenue was in excess of $7 million, and the assessed value of the plant's real estate was approximately $18 million.

864 F.2d 486, 491 (7th Cir.1988)). Bunge claims that this was harmful error, and it cites two Illinois cases for the proposition that reversal is required if undue emphasis is placed on irrelevant evidence of a party's financial condition, or if the jury's verdict is affected by it. *Leggett v. Kumar*, 212 Ill. App.3d 255, 156 Ill.Dec. 527, 541, 570 N.E.2d 1249, 1263 (1991); *Pagel v. Yates*, 128 Ill. App.3d 897, 84 Ill.Dec. 180, 185, 471 N.E.2d 946, 951 (1984). Aside from the fact that federal, not state, evidence law governs in a diversity case, *Bachenski v. Malnati*, 11 F.3d 1371, 1376 n. 6 (7th Cir.1993); *see also* Fed. R.Evid. 1101, Bunge's primary obstacle is the fact that the parties had previously stipulated to the amount of compensatory damages.[5] Thus, the jury's sole responsibility was to decide the issue of liability. Clearly, the fact that the jury was not determining the amount of damages greatly diminishes the threat of harmful impact.

Nonetheless, Bunge argues that the admission of this financial evidence was harmful error because it could have led the jury to determine that Bunge could afford to pay the plaintiff's alleged damages, regardless of liability. In essence, Bunge's argument boils down to the assertion that the jury may simply have gone for the deep pocket. However, this possibility already existed, as the jury was surely aware that Bunge, the defendant corporation, had substantially more money than Jackson, the discharged employee. Moreover, no undue emphasis was placed on this evidence, and the parties made no further reference to defendant's financial condition throughout the remainder of the trial. In light of the previous stipulation of the damage amount, we find that whatever error may have been committed by the admission of evidence regarding defendant's financial condition was harmless and does not warrant reversal.

### C.

Bunge raises two more issues on appeal regarding the arbitration decision. First, Bunge challenges the district court's denial of its motion for summary judgment based on the arbitrator's decision. Second, Bunge claims that the district court erred by refusing to allow the arbitrator's decision into evidence. We will discuss each issue in turn.

On February 28, 1990, Jackson filed a grievance, pursuant to his union's collective bargaining agreement, in which he alleged that Bunge was preventing him from working in violation of union rules. An arbitration hearing was held, and the arbitrator issued a nineteen-page decision concluding that Bunge had "just cause" to terminate Jackson's employment. Bunge contends that the arbitrator's decision should be given preclusive effect and therefore the district court erred in denying Bunge's motion for summary judgment.

This Court reviews a grant or denial of summary judgment *de novo*. *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 866 (7th Cir.1994) (citations omitted). Where there are no issues of material fact in dispute, "we determine whether the moving party is entitled to judgment as a matter of law." *Pro–Eco, Inc. v. Board of Comm'rs*, 956 F.2d 635, 637 (7th Cir.1992) (quoting *First Wisconsin Trust Co. v. Schroud*, 916 F.2d 394, 398 (7th Cir.1990)); Fed.R.Civ.P. 56(c).

Bunge argues that the arbitrator's decision should bar the plaintiff's retaliatory discharge claim. We can dispose of this issue quite briefly. The Illinois Supreme Court has specifically found that *res judicata* does not apply in such situations. *Beckman v. Freeman United Coal Mining Co.*, 123 Ill.2d 281, 122 Ill.Dec. 805, 807, 527 N.E.2d 303, 305 (1988); *see also Ryherd v. General Cable Co.*, 124 Ill.2d 418, 125 Ill.Dec. 273, 280, 530 N.E.2d 431, 438 (1988) ("Since the right to be free from retaliatory discharge also cannot be waived, it follows that a prior arbitration proceeding can have no collateral estoppel effect."). In *Beckman*, as in the case at bar, a union employee filed a grievance pursuant to his union's collective bargaining agreement, an arbitration hearing was held, the arbitrator ruled that "just cause" existed for terminating the employee, and the employee

---

5. The record indicates, and it was confirmed at oral argument, that prior to trial the parties had stipulated to compensatory damages in the amount of $75,000.

subsequently filed suit for retaliatory discharge. *Beckman,* 122 Ill.Dec. at 807, 527 N.E.2d at 305. Although the employee's claim in *Beckman* was ultimately dismissed on other grounds, the court explicitly held that the retaliatory discharge action was not barred by reason of the arbitrator's ruling. *Beckman,* 122 Ill.Dec. at 807, 527 N.E.2d at 305. Since under Illinois law it is clear that the arbitrator's decision did not bar Jackson from bringing a retaliatory discharge action, the district court properly denied Bunge's motion for summary judgment.

■ Next, Bunge contends that the district court erred in excluding evidence of the arbitrator's decision at trial. In refusing to admit the arbitrator's decision into evidence, the district court stated that the probative value was out-weighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. *See* Fed.R.Evid. 403. A trial court has the discretion to admit an arbitration decision into evidence and to accord it such weight as is deemed appropriate, but there is no requirement that the court must allow an arbitration decision to be admitted at all. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974).

Our standard of review for determining whether the district court committed reversible error in either the admission or exclusion of evidence is abuse of discretion. *Taylor v. National R.R. Passenger Corp.,* 920 F.2d 1372, 1375 (7th Cir.1990). This "abuse of discretion" standard places a heavy burden on Bunge because "the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather, whether *any* reasonable person could agree with the district court." *Cook,* 940 F.2d at 212 (quoting *Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261, 1266 (7th Cir.1988)).

■ Jackson argues that the district court properly excluded the arbitrator's decision because its admission into evidence would have been unfairly prejudicial by creating the risk that the arbitrator's decision and rationale would be substituted for the jury's decision. In *Gardner–Denver,* which was a Title VII action claiming unlawful discharge based on racial discrimination, the Court stated that the relevant factors to be considered include "the degree of procedural fairness in the arbitration forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators." *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 1025 n. 21, 39 L.Ed.2d 147 (1974). In the case at bar, the arbitrator candidly admitted in his written decision that he was relying on testimony that was arguably inadmissible hearsay, and the plaintiff contends that other aspects of procedural fairness were absent as well. Moreover, the arbitrator never addressed the issue of whether Bunge had a retaliatory motive in discharging the plaintiff, but instead focused on whether Jackson was properly terminated pursuant to the collective bargaining agreement. We conclude that the district court did not abuse its discretion in refusing to admit the arbitrator's decision.

## D.

■ Finally, Jackson cross-appeals from the district court's decision to grant Bunge's motion for judgment as a matter of law. Jackson claims that by establishing a *prima facie* case of retaliatory discharge, he automatically meets the threshold for submitting the punitive damage issue to the jury. We review a district court's decision to grant a motion for judgment as a matter of law *de novo. Sokol Crystal Products v. DSC Communications Corp.,* 15 F.3d 1427, 1432 (7th Cir.1994).

We do not accept Jackson's theory that the issue of punitive damages must be sent to the jury any time that the plaintiff satisfies the formal elements of a retaliatory discharge claim. Although punitive damages may properly be awarded in retaliatory discharge cases, they are only appropriate when the defendant acts willfully, with actual malice, or with such gross negligence as to indicate a wanton disregard for the rights of others. *See Kelsay,* 23 Ill.Dec. at 565, 384 N.E.2d at 359; *Kritzen v. Flender Corp.,* 226 Ill.App.3d 541, 168 Ill.Dec. 509, 519, 589 N.E.2d 909, 919, *appeal denied,* 146 Ill.2d 630, 176 Ill. Dec. 801, 602 N.E.2d 455 (1992). Moreover, "while the measurement of punitive damages is a jury question, the preliminary question

of whether the facts of a particular case justify the imposition of punitive damages is properly one of law." *Kelsay*, 23 Ill.Dec. at 565, 384 N.E.2d at 359.

Illinois law clearly supports the district court's ruling that if the plaintiff presents no evidence of an employer's willful or wanton misconduct, then punitive damages will not be available as a remedy for plaintiff's retaliatory discharge cause of action. *See, e.g., Kritzen*, 168 Ill.Dec. at 519, 589 N.E.2d at 919 (holding in a retaliatory discharge case that "punitive damages require proof of misconduct beyond that needed for a basic action"); *Knecht v. Radiac Abrasives, Inc.*, 219 Ill.App.3d 979, 162 Ill.Dec. 434, 437, 579 N.E.2d 1248, 1251 (1991) (stating that in a jury trial on a retaliatory discharge claim the "court decides whether the evidence makes a *prima facie* case for punitive damages"), *appeal denied*, 143 Ill.2d 639, 167 Ill.Dec. 401, 587 N.E.2d 1016 (1992). Jackson relies on this Court's earlier decision in *United States Fire Insurance Co. v. Beltmann North American Co.*, 883 F.2d 564, 569 (7th Cir. 1989), for the proposition that actual malice is a necessary component of a retaliatory discharge claim and therefore need not be separately shown. However, Illinois has explicitly declined to accept the holding of *Beltmann.*[6] *Dixon Distrib. Co. v. Hanover Ins. Co.*, 161 Ill.2d 433, 204 Ill.Dec. 171, 641 N.E.2d 395 (1994) ("We disagree with *Beltmann's* conclusion that, under Illinois law, once a plaintiff proves that his discharge was in retaliation for exercising a protected right, he has *de facto* proved actual malice."). Since Jackson failed to present any evidence to support a finding of willful or wanton misconduct, the district court properly granted Bunge's motion for judgment as a matter of law on the issue of punitive damages.

### III.

For the reasons set forth above, we AFFIRM the judgment of the district court on all grounds.

---

6. As noted *supra*, the substantive law of Illinois governs this diversity case. *See Erie R.R. v.* *Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).