Angela **BERRY**, Plaintiff–Appellant,

v.

William **DELONEY**, Defendant–Appellee.

No. 93–1080.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1994.

Decided June 28, 1994.

Kenneth N. Flaxman, Chicago, IL (argued), for plaintiff-appellant.

Brian W. Ellis, Adler, Kaplan & Begy, (argued), David R. Butzen, Office of State's Atty., of Cook County, Chicago, IL, for defendant-appellee.

Before BAUER, COFFEY, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

High school student Angela Berry sued William Deloney, her truant officer, alleging that Deloney violated her civil rights protected by 42 U.S.C. § 1983, in the course of their nonconsensual sexual relationship. Berry sought damages for being impregnated by Deloney, for physical pain and suffering, and for severe emotional distress in the form of post-traumatic stress disorder. A jury returned a verdict in Deloney's favor. Berry appeals three of the district court's evidentiary rulings and the trial court's denial of her motion to bifurcate the trial. We affirm.

## I. FACTS

In November 1987 Berry sought to transfer from Corliss High School in Chicago to Thornridge High School in School District 205. As truant officer at Thornridge High School, Deloney had the responsibility to verify the information concerning residency provided by transfer students. Deloney testified that he initiated his investigation into Berry's requested transfer by asking Berry and her grandmother to fill out forms requir-

ing background information. After the forms were returned, Deloney would verify the information, initial the forms, and submit the applicant's file to the assistant principal for approval. Deloney's role in the transfer process was limited to verification of information provided by the applicant, and did not include any recommendations as to the propriety of the transfer.

Deloney testified that his sexual relationship with Berry began after he had verified information concerning Berry's residence and Thornridge's assistant principal determined that Berry lived in a different school district. Deloney stated that Berry paged him some time in December of 1987 to invite him to lunch at her grandmother's home. During this visit, the two allegedly expressed their mutual attraction and launched into a sexual relationship. Berry disputed Deloney's account and maintained that Deloney compelled her to have sex with him as a condition of the transfer. At trial Deloney testified that their relationship included fifteen to twenty consensual sexual encounters, but Berry asserted that it was limited to six instances of coerced sex. After Berry informed Deloney in June of 1988 that she was pregnant, Deloney allegedly coerced her into further sexual encounters before he would disgorge money for an abortion. Although Deloney paid Berry $150.00 for the abortion, she abandoned her plans because she stated the pregnancy had progressed to a point at which the procedure would cost more.

When Berry's grandmother learned of the pregnancy, she threatened to throw Berry and her child out of the house if Berry did not get an abortion. Unable to acquire enough money for an abortion, Berry opted to take an overdose of sleeping pills out of desperation to induce the abortion. While recovering from the overdose in the hospital, Berry told her grandmother that the difficulties caused by her pregnancy drove her to attempt suicide. Berry's story was contradicted at her trial in district court, however, by a social worker who attended to Berry.

The social worker testified that Berry told her that the overdose was simply an attempt to induce an abortion. Berry's mother corroborated the social worker's recollection of Berry's explanation. During her testimony at trial, Berry conceded that she never attempted suicide. In August of 1988, when she was over five months pregnant, Berry had an abortion. Approximately four months after Berry's overdose, her grandmother filed a criminal charge against Deloney. In 1989, Deloney pleaded guilty to aggravated criminal sexual abuse, commonly referred to as "statutory rape." See 720 ILCS 5/12–16(d). In August of 1991, Berry filed her complaint in district court seeking relief under the Civil Rights Act, 42 U.S.C. § 1983.

Prior to trial, the district judge denied Berry's motion in limine seeking to preclude Deloney from referring to Berry's sexual activity other than that with Deloney. The district court ruled that such evidence was admissible solely on the damages issue of whether Deloney or another man impregnated her. At trial, Deloney attempted to prove that any damages Berry sustained from being impregnated and obtaining an abortion should be reduced by plaintiff's emotional and physical injuries from pregnancies and abortions prior and subsequent to her relationship with Deloney. The trial judge ruled that evidence of Berry's prior and subsequent abortions was admissible only as to the damages issue in the case. Counsel then moved to bifurcate the trial to preclude any mention of the plaintiff's sexual relationships with men other than Deloney or other abortions until after liability had been determined. The district court denied the motion to bifurcate, and stated that a limiting instruction would dissipate any threat of undue prejudice. Prior to testimony on the subject of the plaintiff's two abortions, the trial court instructed the jury that it should consider testimony about the abortions and the circumstances leading to the abortions only in regard to the damages issue.[1] As a result of

---

1. The court gave the jury the following limiting instruction immediately prior to testimony on the subject of Berry's abortions:

[T]he following questions now that are going to be asked may relate to an alleged abortion that has not already been testified to and the surrounding circumstances. Now, such questions and answers are permitted and are received into evidence only on a limited basis.

the trial court's ruling, the jury heard testimony from Berry and her mother that Berry had two abortions, the abortion allegedly caused by her relationship with Deloney, and an abortion she had in 1986 following impregnation by a man named Andreas Prince. The jury also learned through Berry's testimony that she subsequently had a child fathered by Prince on June 2, 1987. To establish that his professional relationship with Berry regarding her requested school transfer had ended prior to their sexual involvement, Deloney testified that when he met Berry on November 14, 1987, he initialed the school form thus concluding his professional contact. Berry's counsel attempted to impeach Deloney on cross-examination by inquiring into the whereabouts of the records Deloney had initialed in November of 1987. Deloney's counsel had subpoenaed the document from School District No. 205, but it could not be located. The trial court sustained defense counsel's objection to any inquiry about the whereabouts of subpoenaed documents. At the close of the evidence, the jury returned a verdict in Deloney's favor on the liability issue.

## II. ISSUES

Berry raises the following issues on appeal: (1) whether the district court abused its discretion in admitting evidence concerning Berry's sexual relationships during the time period when she was impregnated; (2) whether the district court erred in admitting evidence of Berry's abortions before and following her relationship with Deloney; (3) whether the trial court erred in denying Berry's motion to bifurcate the trial; and (4) whether the trial court erred in precluding Berry's counsel from cross-examining Deloney on the whereabouts of subpoenaed school records.

It's only being received for the limited purpose as to its effect on the damages claim by plaintiff. It is not to be considered on the question of liability. The abortion that would be inquired about was not caused by the defendant, so that he should not be held responsible for its effects.

The evidence shall not be used for proof as to the plaintiff's character or any claimed propen-

## III. ANALYSIS

### A. Evidentiary Rulings

■ An appellant challenging a trial court's evidentiary rulings has an onerous burden "because a reviewing court gives special deference to the evidentiary rulings of the trial court." *Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1183 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993); *see also Klonowski v. International Armament Corp.,* 17 F.3d 992, 995 (7th Cir.1994).

> "Under the abuse of discretion standard of review, the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place.... Rather, the abuse of discretion standard is met only when the trial judge's decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision, or where the supposed facts found are clearly erroneous."

*Id.* (quoting *Ross v. Black & Decker, Inc.,* 977 F.2d at 1183).

### 1. Evidence of Plaintiff's Sexual Relationships and Abortions

■ Berry asserts that the trial court erred in admitting evidence concerning her sexual relationships and any other abortions because such evidence was not relevant and any probative value it had was outweighed by its prejudice to her. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "Evidence is relevant simply if it tends to make a witness' testimony more or less credible." 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 401[05]; *see Davis v. Lane,* 814 F.2d 397, 399 (7th Cir.1987) (in a § 1983 claim, evi-

sity to commit any particular acts. It is not admitted for that purpose and cannot be considered for that purpose. It is received and may be used only as it may affect the question of damages to the plaintiff and the effect on her present claimed condition. It may be considered by you then only for that limited purpose.

dence that plaintiff may have been armed with a dangerous weapon was relevant to the reasonableness of officer's decision to shoot him). Federal Rule of Evidence 403 provides that the district court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or time considerations. Fed.R.Evid. 403.

■ Evidence concerning Berry's sexual relationship with men other than Deloney was unquestionably relevant because Deloney was not responsible for any emotional or physical injuries (damages) caused by her sexual activity with other men. The evidence of sexual activity was limited to a time period beginning approximately two years prior to the relationship with Deloney and ending with the abortion of the child allegedly fathered by Deloney in August 1988. Berry's claim for damages rested in part on her allegation that she suffered psychological trauma from an unwanted pregnancy and having to terminate that pregnancy. Evidence that the plaintiff had sexual relationships with men other than Deloney that resulted in pregnancy before or after the relationship with Deloney would be relevant to the jury's determination of the amount of damages. Furthermore, Berry's sexual relationships with other men during the time Deloney allegedly impregnated her were relevant as to the issue of whether it was Deloney or another man who impregnated Berry and caused the alleged damages. Deloney's counsel impeached Berry with her prior inconsistent statement that Deloney was not the only man who could have impregnated her during the time frame set forth in the complaint. Moreover, Deloney testified that in March of 1988, he took Berry to a doctor for a pregnancy test and he was advised by Berry that the pregnancy test results were negative. Deloney also testified that he and Berry terminated all sexual activity prior to the pregnancy test. Any testimony concerning Berry's sexual relationships was relevant to damages in that Deloney's testimony and

Berry's prior inconsistent statements tended to undermine Berry's claim that Deloney alone caused her injury and limited the extent of the damages.[2]

■ The evidence concerning Berry's prior and subsequent abortions was also relevant because the jury could find that it diminished the amount of the plaintiff's damages claim for pain, suffering, and emotional injuries allegedly incurred as a result of her relationship with Deloney. We are satisfied that the trial court's balance of the probative value of the testimony concerning other sexual relationships and abortions against its potentially prejudicial impact was proper. When the district court has weighed the probative value of evidence against the potential prejudice we are especially hesitant to reverse a Rule 403 decision. *See Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1296 (7th Cir.1993). Each time defense counsel elicited testimony concerning sex with other men and the plaintiff's other abortions, the trial court instructed the jury to consider it only as to the plaintiff's request for damages. The court emphasized in its instruction that the evidence of sex with other men and other abortions must not be used to evaluate Berry's character. The district court's limiting instructions dispelled any potential prejudice against the plaintiff. *See United States v. Kreiser*, 15 F.3d 635, 641 (7th Cir.1994) (a jury is presumed to have followed its instructions); *Stutzman v. CRST, Inc.*, 997 F.2d 291, 297 n. 2 (7th Cir.1993) (same). Berry's counsel has not alleged that the limiting instruction was deficient. We hold that under the circumstances of this case combined with the repetition of the court's limiting instructions the trial judge did not commit an abuse of discretion in admitting evidence of the plaintiff's sexual relations with men other than Deloney and her other abortions as to the question of damages.

2. Exclusion of Cross–Examination Regarding Missing Evidence

■ Berry asserts that the trial court erred when it refused to admit evidence that

---

2. Berry's invocation of Rule 412 of the Federal Rule of Evidence and two cases applying Rule 412, *Cruz–Sanchez v. Rivera–Cordero*, 835 F.2d 947 (1st Cir.1987); *F. Doe v. United States*, 666 F.2d 43 (4th Cir.1981), is inapposite. Rule 412, which essentially prohibits evidence of the victim's past sexual behavior in rape or sexual assault case, applies by its terms only to criminal sex offense cases. *See* Fed.R.Evid. 412(a)–(b).

School District No. 205 ("District 205") failed to produce the report that Deloney's counsel sought in a pre-trial subpoena. Deloney testified that he had completed the report verifying Berry's residence before their sexual relationship began. The report presumably would have verified or impeached Deloney's claim that he completed his professional relationship with Berry before their initial sexual encounter. The evidentiary issue arose at trial when Berry attempted to cross-examine Deloney concerning District 205's failure to produce an address verification form that Deloney testified he had completed and submitted to the assistant principal for review. Berry's counsel claimed that he was entitled to inquire about the report because one permissible inference from the report's unavailability was that Deloney would have produced the report substantiating his claim if it was favorable to him, and his failure to come forward with the evidence suggested that it was unfavorable.

The trial judge sustained the defense's objection to the "missing evidence" cross-examination, and later precluded the plaintiff from calling a witness from District 205 to testify that he was unable to produce the requested record. The district judge reasoned that there were numerous possible reasons for District 205's failure to produce the report. The court noted that the document could just as likely have been destroyed or mislaid or possibly District 205 failed to properly respond to the subpoena. Moreover, the judge observed that the report was "totally out of [Deloney's] control shortly after the interview, and that he [did] not have any control over it after that." Instead of supporting inferences that Deloney was lying about the report, the trial court found that testimony about the missing report would simply invite conjecture.

The district court's ruling is supported by this court's discussion of the "missing evidence" instruction in *Niehus v. Liberio*, 973 F.2d 526 (7th Cir.1992). While expressing doubts about the "control" requirement in the jury instruction given by the district court in *Niehus*, we stated that the evidence of a "cover up" of evidence by the defendant opposing the missing evidence instruction warranted the plaintiff's comment on the suspicious circumstances as well as a jury instruction on the missing evidence. This case is distinguishable from *Niehus* in that there is no evidence that Deloney, or District 205 employees acting in concert with Deloney, withheld the report. Instead, Deloney attempted to subpoena the report, among other documents, in the apparent belief that it would support his claim that he had completed his official duties well before launching into a sexual relationship with the plaintiff. At a minimum, we required in *Niehus* that "there is evidence that a party would surely have introduced had it been helpful, permitting an inference that the evidence would instead have helped his opponent." Deloney could not introduce the report as evidence because he had failed in his attempt to subpoena the document from District 205. We hold that the district court acted within its discretion in precluding plaintiff's counsel from admitting evidence that would have merely invited the jury to speculate that Deloney suppressed evidence helpful to the plaintiff.

### B. Motion To Bifurcate

■ At the outset of the trial, the trial court denied Berry's motion in limine to exclude evidence of sexual activity with men other than Deloney. The court reserved a final ruling on the admissibility of other abortions until after the plaintiff's direct testimony. After concluding that the probative impact of the other abortions outweighed any prejudice, the court allowed Deloney to cross-examine Berry on this topic so the jury could assess what damages Berry endured from the one abortion following the impregnation allegedly caused by Deloney. After the adverse evidentiary ruling, Berry immediately moved the trial court to bifurcate the damages portion of the case from the determination of liability. The court denied Berry's motion, reasoning that bifurcation was not practical because the same witnesses would have to testify at both parts of a bifurcated trial. Furthermore, the court believed that repeated admonitions to the jury to consider such evidence only as to damages would eliminate any potential prejudice as effectively as bifurcation.

In *DeWitt, Porter, Huggett v. Kovalic,* 991 F.2d 1243 (7th Cir.1993), this court stated:

> Federal Rule of Civil Procedure 42(b) permits the separate trial of any issue when separation would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy...." *MCI Communications v. American Tel. and Tel. Co.,* 708 F.2d 1081, 1166 (7th Cir.1983). Only one of these criteria need be satisfied for a court to order a separate trial. *Id.* We review a district court's bifurcation decisions for an abuse of discretion. *Barr Laboratories, Inc. v. Abbott Laboratories,* 978 F.2d 98, 105 (3d Cir.1992).

*Id.* at 1245.

Berry contends that the trial should have been bifurcated because the joint trial dealing with the liability and damages questions unfairly prejudiced her case. The only support Berry marshals for this argument is an isolated quote of the trial judge expressing concern that the jury would improperly use the evidence as "an unfair basis for decision ... an emotional basis as opposed to any kind of rational basis." A review of the record, however, discloses that the trial judge was commenting only on the defense's failed proposal to use the evidence to suggest that Berry had an ulterior motive for suing Deloney. The court was not then considering use of the evidence to limit Berry's damage claim. When later engaging in the Rule 403 balancing of probative value and prejudice of the same evidence used in reference to *damages,* the trial court properly ruled that the evidence was admissible for the limited purpose of determining damages only. The trial court's repeated admonition to the jury to consider the disputed evidence only in assessing damages precluded any need for a bifurcated trial. Explaining its decision to deny Berry's bifurcation motion, the trial court noted that "the [parties'] interests were better served by the simultaneous trial of liability and damage issues. Testimony as to liability would come from the same witnesses [who would testify as to damages], making this action conducive to adjudication in a single, comprehensive proceeding." We hold that the district court did not abuse its discretion in denying Berry's motion to bifurcate.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.